[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned cases are appeals from the sewer assessments levied from 1994 to the present on an apartment building in West Haven owned by the plaintiffs. In their complaints as originally filed, the plaintiffs made two claims: that the West Haven sewer assessment charges violate C.G.S. § 7-255 (a) and West Haven Code § 222-21 and that the rate classifications and operation of those classifications violate the equal protection clauses of the state and federal constitutions. On the day of trial, the plaintiffs moved for leave to file an amended complaint adding a claim of violation of the federal Clean Water Act, 33 U.S.C. § 1284 (b)(1).
The defendants initially objected but then took the position in a letter dated February 4, 1997 that they would not press their objection if the court considered its brief on the Clean Water Act issue in the appeal filed in 1995 as its position with respect to the 1994 appeal. The court will do so.
With regard to the claims made, the court finds the facts to be as follows. The plaintiffs own an apartment building known as Williston Apartments, located at 711 Savin Avenue in West Haven. There are sixty-eight apartments in the building. Seventeen of those apartments are efficiency apartments. The rest of the fifty-one apartments are one-bedroom apartments. Only four of the sixty-eight apartments are occupied by more than one person; fifty-eight of the units are occupied by a person over sixty-five years of age; however, the building is not officially designated in any way as housing for the elderly. Each apartment has a bathroom and a kitchen. There is one communal washing machine for each seventeen units.
The apartment building has only one water meter and one sewer connection. For purposes of sewer assessments, the property has been designated as a residential use and the defendants have assessed the plaintiffs with a separate unit charge for each of the sixty-eight units.
The ordinance pursuant to which the defendants have assessed charges against the plaintiffs, Chapter 222, was enacted in 1994. CT Page 3866 Before that time, there was no separate sewer use charge to support sewer treatment functions in West Haven. Instead, those functions were part of the general municipal budget paid for through the same property tax as the rest of the city budget. The sewer tax ordinance was enacted in order to assure adequate funding for sewer treatment facilities. Most of the costs of operating a sewage treatment plant were found to be fixed costs, that is, costs of operation that were incurred annually regardless of the volume of waste water emitted from the various properties in the city.
Pursuant to Ordinance 227, the Water Pollution Control Commission voted on April 21, 1994 to recommend to the City Council that the Council adopt sewer use charges classifying property as residential, commercial, or institutional. Residential users are assessed a flat unit charge of $134.00 per year, regardless of actual volume of water used or waste water generated. (The ordinance provides for assessment of additional unit charges if a residential unit uses more than 91,250 gallons of water per year, however the city has not implemented a system for issuing charges for use in excess of the first 91,250 gallons). The city assesses commercial and institutional properties on the basis of one unit charge for the first 91,250 gallons of water used. If such a user uses more water, the charge is another unit for each 91,250 gallons or portion thereof. If such a user uses less than one unit, it must still pay for a full unit.
The city has classified apartment buildings as residential users and has assessed a unit fee as to each unit in the building, such that the plaintiffs' assessment is 68 times $134.00 or $9,112.00 per year. The parties have stipulated that the actual water use for this property is as follows:
 for 1991-92: 2,752,500 gallons; for 1992-93: 2,737,500 gallons; for 1993-94: 2,827,500 gallons.
If the plaintiffs' apartment building were assessed in the same way as the property of commercial or institutional users, that is, based on actual water use, the annual charge would be approximately $2,948.00 rather than the $9,112.00 assessed on the per-unit basis.
The parties have stipulated that the construction of the sewage collection and treatment system of the City of West Haven CT Page 3867 was funded with monies received from the federal government.
Aggrievement
The court finds that the plaintiffs are aggrieved pursuant to Conn. Gen. Stat. § 7-255 by the action of the defendants in that they can demonstrate an actual impact upon themselves resulting from the rate schedule adopted. See Milford v. Local 1566, 200 Conn. 91, 96 (1986). Aggrievement has not been contested.
Standard of Review
While these cases are defined as appeals from the sewer use charges imposed, pursuant to C.G.S. § 7-255 (a), the parties stipulated that the proceeding is a trial de novo to this court on the merits of the claims, based on the record filed, the written stipulations of the parties, and the additional testimony presented to the court.
Process of Adoption of Sewer Rates
While the parties have set forth in great detail the history of the adoption by the City of West Haven of the sewer rates at issue, no claim is made that this process violated any requirement of C.G.S. § 7-255 with regard to opportunities to be heard or other procedural provisions, and the court finds that for the purposes of these cases the sewer rates are to be considered to have been enacted according to the procedures set forth in § 7-255.
Claim That Rate Classifications Violate § 7-522 (a)
The plaintiffs claim that the rate structure as applied to their apartment building violates the requirements of § 7-255
that sewer use rates 1) be "fair and reasonable;" 2) that municipally-owned and tax exempt property "shall be subject to such charges under the same conditions as are the owners of other property;" and 3) that the flat rate imposed on residential units is disproportionate to rates charged to commercial, institutional and industrial users.
General Statutes § 7-255 provides that a water pollution control authority "may establish and revise fair and reasonable charges for connection with and for the use of a sewerage CT Page 3868 system." The statute makes the owners of a property liable for the payment of the use charge levied. That statute further provides that
 [I]n establishing or revising such charges the water pollution control authority may classify the property connected or to be connected with the sewer system and the users of such system, including categories of industrial users, and may give consideration to any factors relating to the kind, quality or extent of use of any such property or classification of property or users including, but not limited to, (1) the volume of water discharged to the sewerage system, (2) the type or size of building connected with the sewerage system, (3) the member of plumbing fixtures connected with the sewerage system, (4) the number of persons customarily using the property served by the sewerage system, (5) in the case of commercial or industrial property, the average number of employees and guests using the property and (6) the quality and character of the material discharged into the sewerage system.
The statute provides that "[t]he water pollution control authority may establish minimum charges . . . for the use of a sewerage system."
The defendants established a minimum fee of $134.00 per year for each residential unit using the sewer system. The plaintiffs do not claim that this rate per residence is itself unfair or unreasonable. Rather, the plaintiffs claim that the rate structure is unfair and unreasonable because other classifications of sewer users are charged on the basis of actual use of water after the first 91,250 gallons.
The court finds that the defendants were warranted in classifying an apartment building as a residential use. Each apartment is a residence with a separate kitchen and bathroom. The fact that the occupancy level is low does not distinguish apartment residences from residences that are single family homes that happen to be occupied by only one person. The plaintiffs claim that it was unfair to classify these sixty-eight residences as residences and that they should instead be classified like dormitories or commercial establishments. The record indicates that all users, including commercial and industrial users, are charged a minimum charge of one unit, that is, 91,250 gallons for the minimum rate of $134.00. CT Page 3869
The only violation of § 7-255 that the plaintiffs have arguably identified is the claim that the defendants are failing to assess charges for multiple-unit residential uses that are owned by the city or tax exempt entities on the same per-unit basis but is instead charging them on the basis of actual water used. Such a practice may violate the provision of § 7-255 that "[m]unicipally owned and other tax-exempt property which uses the sewerage system shall be subject to such charges under the same conditions as are the owner of other property," however, such proof does not establish the unreasonableness or unfairness of the charge imposed on the plaintiffs. In other words, any need for the defendants to adjust charges to city-owned properties would not establish the unreasonableness of the charges to the plaintiffs. Notably, the plaintiffs have not brought a declaratory judgment action or other action aimed at increasing the charges to city-owned users; rather, their claims relate to the charges to themselves.
The plaintiffs have not taken the position that it is a violation of § 7-255 for the defendants to fail to charge all residential owners strictly on the basis of actual use. Such an argument would be fruitless since § 7-255 expressly authorizes a minimum use charge. The Connecticut Supreme Court ruled inRobert Treat Associates Ltd. Partnership v. Board of SewerCommissioners, 220 Conn. 18, 28-29 (1991) that a water pollution control authority is not required by § 7-255 to consider actual sewer discharge in calculating sewer use charges with regard to any of the classifications it adopts. Id.
The plaintiff has not proven that the defendants are violating § 7-255 (a) with regard to the rates charged to the plaintiffs.
Claim of Violation of Equal Protection Clauses
The plaintiffs claim that the classification of their apartment building as sixty-eight residences rather than as a single commercial use for purposes of imposing sewer use charges constitutes a denial of equal protection of the law. The plaintiffs acknowledge in their brief that their burden is to establish that the classification used in imposing different methods of calculating charges on different classes of users is without a rational relation to the purpose of the statutory scheme concerning water pollution control facilities.[1]
CT Page 3870
Since the plaintiffs do not claim that the sewer rate structure touches upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge. Trimble v. Gordon, 430 U.S. 762, 767,97 S.Ct. 1459, 52 L.Ed.2d 31 (1977); Massachusetts Board ofRetirement v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562,49 L.Ed.2d 520 (1976). Under the rational basis test, the court's function is "to decide whether the purpose of the legislature is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way." Piercev. Albanese, 144 Conn. 241, 249, appeal dismissed, 355 U.S. 15,78 S.Ct. 36, 2 L.Ed.2d 21 (1957). The test is the same under both the federal and state constitutions. Circuit-Wise, Inc. v.Commissioner of Revenue Services, 215 Conn. 292, 300 (1990);Caldor's, Inc. v. Bedding Barn, Inc., 177 Conn. 304, 314 (1979).
The plaintiffs do not dispute that their apartment building is treated in the same way as to sewer use charges as other private, non-governmental structures containing residential units. In claiming that it should be treated instead like a university dormitory or a nursing home the plaintiffs overlook the rational distinction that dormitory rooms and nursing home rooms do not involve generation of separate kitchen and bathroom waste for each unit.
The plaintiffs argue in their brief that the defendants do not impose a separate sewer use charge for each residential unit owned by the West Haven Housing Authority, and they identify this claimed disparity as a denial of equal protection. The defendants have denied in their Answers that the multi-unit residential complexes of the municipal housing authority are being charged on a different basis than privately owned apartment buildings. As has been discussed above, C.G.S. § 7-255 (a) specifically requires that municipally-owned and tax-exempt property that uses the sewerage system be subject to charges "under the same conditions as are the owners of other property." The West Haven sewer ordinance, at § 222-28 provides for payment of one "equivalent unit" for each dwelling unit, with no exception made for dwelling units operated by public entities. While the rate structure set forth in § 222-28(c) of the West Haven ordinances provides for classification for commercial and governmental users based on measured use, "governmental user" is defined in the ordinance in a manner that does not indicate that governmentally-owned dwelling units are to be treated as CT Page 3871 "governmental users:"
 Governmental User-Establishments with legislative, judicial, administrative and regulatory activities of federal, state and local governments which discharge waste to the wastewater treatment facilities.
West Haven Ordinance § 222.6.
While a document concerning a presentation to the City Council listed the West Haven Housing Authority among "Commercial/Institutional" Users (Record Exhibit T) no evidence was presented to prove that this proposal was given effect in actual charges. Although plaintiffs' counsel questioned Abdul Quadar, a member of the board of the Water Pollution Control Authority, concerning the basis for charges to universities and nursing homes, counsel did not elicit any testimony to confirm the claim that housing authority apartment buildings were not charged a residential fee per dwelling unit. A party who asserts a claim of denial of equal protection has the burden of proving facts to establish the claimed violation. The plaintiffs have failed to discharge that burden of proof, since they have not shown even to the civil standard of proof that their apartment building is being charged for sewer fees at a rate different from that charged to other apartment buildings.
The plaintiffs also allege that it is a denial of equal protection of the laws to charge apartment buildings on a different basis than commercial uses or institutional uses. Government entities have broad discretion in creating classifications in assessing fees and taxes, and a government entity is "not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value." Allied Stores of Ohio v. Bowes,358 U.S. 522, 527 (1959). "As long as some conceivable rational basis for the difference exists, a classification is not offensive merely because it is not made with mathematical nicety." UnitedIlluminating Co. v. New Haven, 179 Conn. 617, 640 (1980), quotingKarp v. Zoning Board, 156 Conn. 287, 299 (1968).
The distinction in the fee structure for dwelling units and other uses rests on an actual difference in these classes of uses. Unlike commercial users, dwelling units in apartment buildings generate waste from their individual kitchens and bathrooms. Institutions generally do not have separate kitchen CT Page 3872 and bathroom facilities for each resident. On this basis, it is rational for the defendants to classify dwelling units in apartment buildings in the same classification as residences rather than in the same classification as commercial entities or institutions. The court notes that all sewer users must pay the minimum one unit charge, regardless of their classification, pursuant to Ordinance § 222-28.
Violation of Ordinance § 222-21
In their amended appeal in CV95-374787, the plaintiffs allege that the sewer use charge based on a charge per dwelling unit rather than on overall water use by their apartment building violated § 222-21 of the Ordinances of the City of West Haven in that the charge exceeds the plaintiffs' proportionate share of the cost of operating and maintaining the sewer system.
The defendants have filed an answer to the amended appeal in CV95-374787 denying the claim of violation of Ordinance § 222-21.
The federal Clean Water Act requires that when a sewer treatment plant is constructed with funds from a federal assistance grant under the Clean Water Act, a condition of receipt of the federal funds is to "adopt a system of charges to assure that each recipient of waste treatment services within the applicant's jurisdiction, as determined by the Administrator, will pay its proportionate share . . . of the costs of operation and maintenance (including replacement) of any waste treatment services provided by the applicant . . ." 33 U.S.C. § 1284
(b)(1).
The plaintiffs have not actually alleged in their amended complaint that the West Haven sewer treatment system was constructed with the kind of federal grant that entails conformity with the cited provision, however in their stipulation of facts, at paragraph 15, the parties so stipulated, and the town ordinance governing rate-making, § 222-21, contains the required provision of proportionality of charges:
 (A) Charges for sanitary sewer services furnished by the city for commercial, residential, industrial, and institutional users shall be established by the City Council and periodically reviewed by the WPCC as set forth in this chapter. Such charges shall reflect the proportional distribution of costs among all users. "Costs" refers to all costs for operations.CT Page 3873 maintenance, administration and repair/replacement of the sewer system, including the wastewater treatment facility
[emphasis supplied].
The plaintiffs claim that the rate structure adopted does not in fact distribute costs proportionally because only residential users bear the cost of processing waste water that is not the result of water consumption and use, for example, the cost of processing rain water that enters the sewer system through storm drains and the cost of paying for processing other unmetered waste. The parties have stipulated in a set of written stipulations of fact dated January 29, 1997 that the rates charged to all users are based on an "equivalent unit" and that
 15. The equivalent units are determined by dividing the annual water consumption in gallons by 91,250 gallons and rounding the result upward to a full integer.
The parties have further stipulated that the residential users are charged a flat rate of one "equivalent unit" for which the charge is $134.00 regardless of the user's actual water consumption.
The plaintiffs argue that Ordinance § 222-21 must be read to require a fee structure that requires each individual user to pay only its proportional share. Scrutiny of the federal regulations enacted to effectuate 33 U.S.C. § 1284 (b)(1) indicate that proportionality may be appropriately determined by reference to the charges not to individual users but to user classes (residential, commercial, etc.). Section 40 C.F.R. § 35.929-1 provides that
 [a] grantee's user charge system based on actual use (or estimated use) of waste water treatment services may be approved if each user (or user class) pays its proportionate share of operation and maintenance (including replacement) costs of treatment works within the grantee's services and, based on the user's proportionate contribution to the total waste water loading from all users (or user classes). To insure a proportional distribution of operation and maintenance costs to all users (or user classes), the user's contribution shall be based on factors such as strength, volume and delivery flow rate characteristics.
Members of all user classes in West Haven are subject to the CT Page 3874 minimum use fee. Contrary to the plaintiffs' assertions, it is not the case that only residential users are charged in excess of their actual water consumption. The plaintiffs allege that there are many residential users who use less than 91,250 gallons and therefore are bearing a proportion of the charges that is greater than their use. The facts in the record do not include proof of this hypothesis. In order to prove that the residential user class is bearing a disproportionate share, the plaintiff would have to present facts showing that in fact the flowage attributable to residential users is less than the gallonage represented by the charges to this class. If there are numerous commercial users who similarly pay the flat rate and create less sewage volume than the gallonage represented by the charges to that user class, then the plaintiffs' hypothesis of disproportionate charges to residential users would not be borne out.
Additionally, nonresidential users whose water consumption exceeds the minimum pay for additional use at a rounded-up rate, such that they pay for fractions of units that do not actually represent their water use and discharge. Without evidence as to the proportion of the waste water flow attributable to each class of user and the charges to each class, this court cannot find that the charges to residential users violate the proportionality requirement of Ordinance 222-21, read according to the interpretation of that requirement furnished by the government authority that requires charges to be proportional.
The court notes, moreover, that a municipality that has been a federal grantee with regard to its waste water treatment facility must obtain federal approval of its system of user charges, and the plaintiffs did not establish that West Haven's fee system has ever been disapproved.
The plaintiffs point out that the federal regulations which explain the requirement that grant recipients' fee structures be proportional require that users be charged proportionally for the costs of processing waste water that cannot be attributed to particular users (such as rain water run off). The regulation that contains this explanation also allows proportionality with regard to this part of the flow to be achieved across user classes. Section 40 C.F.R. § 35.929-2 (d) provides as follows:
 The user charge system shall provide that the costs of operation and maintenance for all flow not directly CT Page 3875 attributable to users (ie., infiltration/inflow) be distributed among all users of the grantee's treatment works system based upon either of the following:
 (1) In the same manner that it distributes the costs of operation and maintenance among users (or user classes) for their actual use, or
 (2) Under a system which used one of any combination of the following factors on a reasonable basis:
(i) flow volume of the user;
(ii) land area of the user;
 (iii) number of hookups or discharges to the user . . .
The court finds that the plaintiffs have not proven by reference to the record or otherwise, the facts necessary to establish their claim of a violation of Ordinance § 222-21 with regard to this part of the flow since the evidence does not establish the actual excess of portion of charges to portion of flow for the various user classes.
Conclusion
The plaintiffs have failed to establish any of their claims and their appeals are dismissed. Judgment shall enter in favor of the defendants.
Beverly J. Hodgson Judge of the Superior Court